David M. Goodrich
   *dgoodrich@wgllp.com*
**Weiland Golden Goodrich, LLP**
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Telephone: (714) 966-1000
Facsimile: (714) 966-1002

Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| In re: | Case No. 2:17-bk-24396-ER |
|---|---|
| CRESTALLIANCE LLC, | Chapter 7 |
| Debtor. | **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER: (1) AUTHORIZING SALE OF 592 EAST 6TH STREET, AZUSA, CALIFORNIA 91702, FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS; (2) APPROVING PROPOSED OVERBID PROCEDURES; (3) DETERMINING THAT BUYERS ARE GOOD FAITH PURCHASERS; (4) AUTHORIZING PAYMENT OF COSTS OF SALE FROM ESCROW; (5) WAIVING THE FOURTEEN (14) DAY STAY PRESCRIBED BY RULE 6004(h) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF DAVID M. GOODRICH, MICHAEL S. SPAGNOLA, AND JAN NEIMAN OF NEIMAN REALTY, INC. IN SUPPORT THEREOF** |
| | DATE:   May 8, 2018 |
| | TIME:   11:00 a.m. |
| | PLACE: Courtroom 1568 |
| |   United States Bankruptcy Court |
| |   Roybal Federal Building |
| |   255 East Temple Street |
| |   Los Angeles, California  90012 |

# TABLE OF CONTENTS

**Page**

PROPOSED OVERBID PROCEDURES..................................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES .................................................5

I. INTRODUCTION ...........................................................................................................5

II. BACKGROUND ............................................................................................................5

    A.    Introductory Facts ...........................................................................................5

    B.    The Property ...........................................................**Error! Bookmark not defined.**

III. THE SALE IS IN THE BEST INTEREST OF THE ESTATE ..................................6

    A.    Sound Business Purpose...................................................................................6

    B.    Reasonable Price .............................................................................................7

    C.    The Sale and Distribution of Proceeds ..........................................................7

    D.    Notice ..............................................................................................................8

    E.    Sale Made in Good Faith.................................................................................8

    F.    Sale of the Property Free and Clear of Liens Under 11 U.S.C. § 363(f) ..................9

    G.    Waiver of the Fourteen-Day Period for Effectiveness of Sale Order .....................10

    H.    Good Faith Purchaser Determination ...........................................................11

    I.    Tax Consequences ........................................................................................12

    J.    Marketing Efforts .........................................................................................12

IV. CONCLUSION .............................................................................................................12

DECLARATION OF DAVID M. GOODRICH.....................................................................14

DECLARATION OF MICHAELP. SPAGNOLA...................................................................16

DECLARATION OF JAN NEIMAN ........................................................................................17

# TABLE OF AUTHORITIES

**Page**

## CASES

*Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*
    722 F.2d 1063 (2d Cir. 1983)................................................................. 6

*In re Abbotts Dairies of Pennsylvania, Inc.*
    788 F.2d 143 (3rd Cir. 1986).................................................................. 11

*In re Continental Air Lines, Inc.*
    780 F.2d 1223 (5th Cir. 1986)............................................................. 6, 7

*In re Ewell*
    958 F.2d 276 (9th Cir. 1992)................................................................. 11

*In re Gerwer*
    898 F. 2d 730 (9th Cir. 1990)................................................................. 9

*In re Indus. Valley Refrigeration & Air Conditioning Supplies, Inc.*
    77 B.R. 15 (Bankr. E.D. Pa. 1987)..................................................... 8, 11

*In re Lahijani*
    325 B.R. 282 (B.A.P. 9th Cir. 2005) ...................................................... 7

*In re McCombs Properties VI, Ltd.*
    88 B.R. 261 (Bankr. C.D. Cal. 1988) ..................................................... 9

*In re Shary*
    152 B.R. 724 (Bankr. N.D. Ohio 1993) ................................................ 10

*In re Slates*
    2012 WL 5359489 (B.A.P. 9th Cir. Oct. 31, 2012) ............................... 6

*In re Suchy*
    786 F.2d 900 (9th Cir. 1985)................................................................ 11

*In re Tabore, Inc.*
    175 B.R. 855 (Bankr. D. N.J. 1994)..................................................... 10

*In re Terrace Gardens Park Partnership*
    96 B.R. 707 (Bankr. W.D. Tex 1989) .................................................. 10

*In re Walter*
    83 B.R. 14 (B.A.P. 9th Cir. 1988)....................................................... 6, 7

*In re Wilde Horse Enters., Inc.*
    136 B.R. 830 (Bankr. C.D. Cal. 1991) .............................................. 6, 7, 8

*Romey v. Sun National Bank (In re Two "S" Corporation)*
    875 F. 2d 240 (9th Circ. 1989)............................................................... 9

*Veltman v. Whetzal*
        93 F.3d 517 (8th Cir. 1996) ............................................................................... 10


## **STATUTES**

11 U.S.C.
        § 102(1) ........................................................................................................... 6

11 U.S.C.
        § 363 ........................................................................................................... 6, 10

11 U.S.C.
        § 363(b) ........................................................................................................... 11

11 U.S.C.
        § 363(b)(1) ................................................................................................. 6, 7, 8

11 U.S.C.
        § 363(f) ............................................................................................................ 8, 9

11 U.S.C.
        § 363(f)(2) ........................................................................................................ 10

11 U.S.C.
        § 363(f)(3) ...................................................................................................... 9, 10

11 U.S.C.
        § 363(m) ........................................................................................................... 11

11 U.S.C.
        § 506(a) .......................................................................................................... 9, 10


## **RULES**

Fed. R. Bank. P.
        Rule 6004(g) .................................................................................................... 10

Fed. R. Bank. P.
        Rule 6004(h) ............................................................................................... 10, 11

**TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; THE DEBTOR AND ITS COUNSEL AND ALL OTHER INTERESTED PARTIES**:

David M. Goodrich, the duly appointed and acting Chapter 7 trustee of the bankruptcy estate ("Estate") of the above-captioned debtor ("Trustee"), seeks an order: *(1) Authorizing Sale Of 592 East 6th Street, Azusa, California 91702, Free And Clear Of Liens, Claims, And Interests; (2) Approving Proposed Overbid Procedures; (3) Determining That Buyers Are Good Faith Purchasers; (4) Authorizing Payment Of Costs Of Sale From Escrow; And (5) Waiving The Fourteen (14) Day Stay Prescribed By Rule 6004(h) Of The Federal Rules Of Bankruptcy Procedure* ("Motion") and respectfully represents as follows:

Through the Motion, the Trustee seeks an order approving the sale ("Sale") of the Estate's right, title and interest in certain residential real property located at 592 East 6th Street, Azusa, California 91702 ("Property"), on the terms and conditions stated in the written offer titled *Residential Income Property Purchase Agreement And Joint Escrow Instructions, Seller Counter Offer No. 1 and Seller's Addendum Re Sale Of Real Estate By Chapter 7 Trustee* (collectively referred to herein as "Purchase Agreement"), attached hereto as **Exhibit 1**, and incorporated herein by reference, to Michael P. Spagnola and Dianna L. Spagnola ("Buyers"), for $600,000.00.

The Trustee seeks an order approving the Sale free and clear of certain liens, claims, and interests, with said liens, claims, and interests to attach to the sales proceeds in the same manner and priority as under applicable law. The Property is being sold on an "as is, where is" basis, with no warranties, recourse, contingencies, or representations of any kind.

The Trustee also seeks an order (i) approving the Trustee's proposed overbid procedures; (ii) determining that the Buyers or the successful bidder is entitled to 11 U.S.C. § 363(m) protection; (iii) authorizing payment of costs of sale from escrow, (iv) waiving the fourteen (14) day stay prescribed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

**PROPOSED OVERBID PROCEDURES**

The proposed Sale to the Buyers is subject to approval of the United States Bankruptcy Court and to qualified overbids.  The Buyers have offered to purchase the Property for $600,000.00 ("Purchase Price"), the balance to be paid within fourteen (14) calendar days following entry of the order approving the sale of the Property.  As noted above, however, the Sale of the Property is subject to overbid pursuant to the following proposed overbid procedures ("Overbid Procedures"):

1.    **Intent To Bid And Overbid Amount**

Any party wishing to bid on the Property ("Overbidder") shall advise the Trustee of their intent to bid on the Property and the amount of their overbid (which must be at least $10,000.00 more than the current selling price of $600,000.00) ("Initial Overbid"), by no later than 12:00 p.m., PDT, two business days before the hearing on the motion ("Overbid Deadline").  In his absolute and sole discretion, the Trustee shall have the right to accept additional overbids submitted prior to the hearing but after the Overbid Deadline.  Any Overbids subsequent to the Initial Overbid of $610,000.00 will be in additional increments of not less than $5,000.00, commencing with the bid amount of $615,000.00.

2.    **Payment Of Deposit**

Any Overbidder shall provide the Trustee with a cashier's check, payable to "David M. Goodrich, Chapter 7 Trustee of the Bankruptcy Estate of Crestalliance, LLC, in the amount of $18,000.00 ("Deposit").  The Deposit must be delivered so that it is received by the Trustee (whose name and address is set forth on the upper left corner of the first page of this Motion) by no later than the Overbid Deadline.

In the event of any Overbid, the $18,000.00 deposit from the Buyers or successful Overbidder shall serve as the Deposit for the Buyers or any successful Overbidder.  The party that is not deemed the "Winning Bidder," at that phrase is defined below, shall have its deposit refunded to him/her/it.

### 3.    Evidence Of Financial Ability To Perform

Any Overbidder must provide the Trustee with evidence of the proposed Overbidder's financial ability to pay the full amount of the Overbid so that such evidence is received by the Trustee no later than the Overbid Deadline.

### 4.    Auction

All parties who have submitted timely bids and otherwise satisfied the foregoing requirements will be able to participate in an auction to be conducted at the hearing on the Motion as is necessary in order to increase their bid. As stated previously, the Initial Overbid will be in the amount of $610,000.00 and any subsequent overbids will be in increments of $5,000.00.

The Trustee will request authority to sell the Property to the bidder with the highest Overbid ("Winning Bidder"), and for authority to sell the Property to the next highest bidder if the Winning Bidder fails to perform. To be considered the "highest overbid," any overbid must be on the same terms and conditions as the Purchase Agreement.

Subject to Court approval, the Trustee will allow overbidders to attend the auction by telephone. Overbidders are encouraged, however, to attend the auction in person.

### 5.    Tender Of Balance Of Purchase Price

The Winning Bidder's Deposit shall be applied towards the total purchase price. The Winning Bidder must tender the balance of the total purchase price to the Trustee via cashier's check within fourteen (14) calendar days following entry of the order approving the sale of the Property to such buyer. To the extent the Winning Bidder fails to tender the balance of the purchase price by such date, that bidder's entire Deposit shall be non-refundable and forfeited to the Trustee.

### 6.    Agreement To Terms And Overbid Procedures

Any Overbidder's tender of the Deposit to the Trustee shall serve as that Overbidder's agreement with these proposed Overbid Procedures and the terms of sale of the Property discussed herein.

This Motion is made pursuant to 11 U.S.C. §§ 363(b)(1) and 365, and Federal Rules of Bankruptcy Procedure 6004 and 6006 on the grounds that, based on the Trustee's sound business

2620374.1                                    3

justification, the Trustee believes the sale of the Property as set forth herein is in the best interests of the Estate.  After solicitation of offers for the Property over the past few months, the current offer from the Buyers is the best offer received to date.  Moreover, the Overbid Procedures provide a process by which the Trustee could secure a higher price for the Property.

This Motion is based on the accompanying Memorandum of Points and Authorities, Declarations Of David M. Goodrich, Michael P. Spagnola and Jan Neiman of Neiman Realty, Inc., the concurrently-filed Local Rule Form 6004-2, the record in this case, all facts and documents that are judicially noticeable and any other or further evidence or argument presented to the Court prior to or at the hearing on the Motion.

**WHEREFORE,** the Trustee respectfully requests that the Court enter an order (i) authorizing the sale to the Buyers or to the highest bidder appearing at the hearing; (ii) approving the Trustee's proposed overbid procedures; (iii) authorizing the Trustee to pay all costs of sale from escrow, (iv) determining that the Buyers or the successful bidder is/are entitled to 11 U.S.C. § 363(m) protection; (vi) waiving the fourteen (14) day stay prescribed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure; and (vii) providing such other and further relief as is proper.

DATED: April 3, 2018                           Respectfully submitted,


                                               */s/ David M. Goodrich*
                                               David M. Goodrich
                                               Chapter 7 Trustee

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

The Trustee seeks an order approving the sale of the Estate's right, title, and interest in the Property. The Trustee filed an application ("Application") seeking the retention of a broker to market and sell the Property, which Application was approved by this Court on March 28, 2018. *See* Docket No. 1. This Motion to sell the Property is a result of such efforts, as will be demonstrated below and in the Declaration of Jan Neiman of Neiman Realty, Inc. ("Neiman Declaration").

The Trustee submits that the price obtained for the Property is its fair market value and that the Sale is in the best interests of the Estate. The Trustee believes all prerequisites for approval of the sale under applicable provisions of the Bankruptcy Code have been satisfied and he therefore urges the Court to grant the Motion.

### II.

### BACKGROUND

A.      **Introductory Facts**

The Debtor filed a chapter 11 petition on November 22, 2017. *See* Docket No. 1. On or about January 17, 2018, the case was converted to one under chapter 7. *See* Docket No.22. Thereafter, David M. Goodrich was appointed as Chapter 7 Trustee for the Estate. *See* Docket No. 25.

The Debtor holds an interest in the Property which was acquired prior to the Petition Date. *See* Docket No. 10, Schedule A/B. The Property is an asset of the Estate.

The Trustee now wishes to sell the property for the price of $600,000.00, subject to overbid, which will result in the realization of equity for the Estate and its creditors.

In summary:

1.      The Property will be sold to the Buyer free and clear of all liens, claims, and encumbrances for the total purchase price of $600,000.00 or to any person or entity who is an accepted Overbidder and the eventual Winning Bidder;

2.      The approved broker's commission, past due and current real property taxes, and the fees and cost of the sale chargeable to the Estate will be paid from the sale proceeds; and

3.      The Trustee shall receive 100% of the net proceeds.

The Trustee avers that the sale of the Property, based upon terms and conditions described herein, will benefit the Estate and its creditors.

**III.**

**THE SALE IS IN THE BEST INTEREST OF THE ESTATE**

Under § 363, a trustee is empowered to sell assets of the estate "after notice and a hearing." 11 U.S.C. § 102(1).  The standards for approval of a sale pursuant to § 363(b)(1) require that the proponent of the sale establish that: "(1) a sound business purpose exists for the sale; (2) the sale is in the best interest of the estate, *i.e.*, the sale price is fair and reasonable; (3) notice to creditors was proper; and (4) the sale is made in good faith." *In re Slates*, 2012 WL 5359489 (B.A.P. 9th Cir. Oct. 31, 2012) (unpublished) (citing *In re Wilde Horse Enters., Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1069 (2d Cir. 1983)).  As discussed more fully below, the Trustee's proposed sale of the Property meets each of these requirements.

**A.      Sound Business Purpose**

The decision to sell property out of the ordinary course of a debtor's business must be based on the reasonable business judgment of the debtor.  *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2nd Cir. 1983).  In determining whether the business purpose is justified under § 363(b)(1), bankruptcy courts apply a flexible, case-by-case approach. *See In re Walter*, 83 B.R. 14, 19 (B.A.P. 9th Cir. 1988) ("the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike.") (quoting *In re Continental Air Lines, Inc.,* 780 F.2d 1223, 1226 (5th Cir. 1986)).  The court should approve a sale of property under § 363(b)(1) if the trustee has established a sound business purpose for the proposed transaction. *In re Walter*, 83 B.R. 14, 16 (9th Cir. BAP 1988); *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830 (Bankr. C.D. Cal. 1991).  The business judgment standard is

1    deferential. *In re Lahijani*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005) ("Ordinarily, the position of

2    the trustee is afforded deference, particularly where business judgment is entailed in the analysis

3    or where there is no objection.").

4        The facts reflect that the Trustee's decision to sell the Property is supported by sound

5    business judgment because the price is fair and the sale will generate significant cash proceeds for

6    the Estate.  Namely, the Sale will net approximately $73,404.07 to the Estate for payment of

7    claims, possibly more.

8        **B.    Reasonable Price**

9        The price is fair, reasonable, and it conforms with the current market of comparable sales.

10   Prior to the listing of the Property by the Trustee, the Debtor accepted an offer of $595,000 after

11   marketing the Property.  After marketing the Property, the Trustee received a higher offer of

12   $600,000 for the Property.  The price reflects extensive marketing efforts of the Property, listing

13   prices of comparable parcels of real property, and the Broker's inspection of the Property.  The

14   Buyers' offer of $600,000.00 is the best offer that the Trustee has received for the Property. As a

15   result, the price is reasonable and in the best interests of the Estate.

16       **C.    The Sale and Distribution of Proceeds**

17       Subject to Court approval, the Trustee seeks approval for a sale of the Property to the

18   Buyers, or any successful Overbidder, free and clear of all liens, claims, and encumbrances.  As

19   part of the approval of the sale of the Property, the Trustee also seeks authority to pay certain costs

20   of sale, accrued real property taxes and any capital gains taxes (if any) upon the close of escrow on

21   the sale.  A summary of the Sale with deductions for all costs and payments to third parties is a

22   follows:

23

24

25

26

27

28

2620374.1                                          7

| Description | Amount |
|---|---|
| Sale Price | $600,000.00 |
| Broker's Commissions (6% of the purchase price) | ($36,000.00) |
| Ocwen:  Holder of the First Deed of Trust | ($426,357.00) |
| Taxes | ($800.00) |
| Additional Charges (including Closing Fee, Tax Certificate, Courier Fee and Deed) | ($10,785.29) |
| **Estimated Net Proceeds available to pay allowed administrative and unsecured claims** | **$126,058.00** |

**D.**    **Notice**

The Trustee must give notice of any sale of property of the estate.  11 U.S.C. § 363(b)(1).  In this matter, the Trustee will give notice to Debtor, the United States Trustee, all known creditors, and any other prospective buyers.  Service of the Motion is proper and constitutes adequate and reasonable notice.  Moreover, notice of the Sale of the Property and bidding procedures will be published on the website for the United States Bankruptcy Court for the Central District of California.

**E.**    **Sale Made in Good Faith**

"Good faith encompasses fair value, and further speaks to the integrity of the transaction."  *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 842 (Bankr. C.D. Cal. 1991) (internal quotation marks omitted).  Bad faith includes collusion between buyer and seller or otherwise taking unfair advantage of other potential purchasers, such as a collusive insider transaction.; *id.*; *see also In re Indus. Valley Refrigeration & Air Conditioning Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987).

The sale of the Property was negotiated at arms' length.  There is no fraud, collusion, or insider transactions present here, and the Buyers received no special treatment or consideration.  Moreover, the Property has been actively marketed, the Sale will be properly publicized on the Bankruptcy Court's website, and the Trustee has accepted the highest and best offer. As a result, the Sale is made in good faith.

**F.    Sale of the Property Free and Clear of Liens Under 11 U.S.C. § 363(f)**

The Trustee seeks authority to complete the Sale free and clear of all liens, claims, and interests.  § 363(f) allows a trustee to sell property of the bankruptcy estate "free and clear of any interest in such property of an entity," if any one of the following five conditions is met:

> (1)    Applicable non-bankruptcy law permits a sale of such property free and clear of such interest;
>
> (2)    Such entity consents;
>
> (3)    Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)    Such interest is in bona fide dispute; or
>
> (5)    Such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest.

11 U.S.C. § 363(f)

Section 363(f) is written in the disjunctive, such that satisfaction of any one of the five conditions is sufficient to allow a debtor in possession to sell property of the estate free and clear of liens. *In re Gerwer*, 898 F. 2d 730 (9th Cir. 1990).  In the instant matter, the Trustee has satisfied at least two of the above five conditions and should be permitted to sell the assets free and clear of liens with such liens transferring to proceeds.

First, in the event of an objection to the instant Motion, the proposed Sale may also proceed free and clear of liens under § 363(f)(3).  Under this subsection, a Trustee may sell property of the estate only if the price at which such property is sold is greater than the aggregate "value" of all liens on such property.  11 U.S.C. § 363(f)(3).  A party asserting a lien on property of the estate is "secured" only to extent of the value of the property on which its lien, claim or interest is fixed, and the balance of any such lien, claim of interest is "unsecured."  Bankruptcy Code § 506(a) limits the secured status of a creditor's claim to the lesser of the allowed amount of the claim or the value of the collateral.  *In re McCombs Properties VI, Ltd.,* 88 B.R. 261, 266 (Bankr. C.D. Cal. 1988).  Accordingly, any creditor claiming an interest in property of the estate to be sold holds a security interest only up to the fair market value of the property itself.  When the

9

1   proposed sale price represents the highest price available for the assets, then the sale free and clear

2   of liens may be approved under Code § 363(f)(3).  *Romey v. Sun National Bank (In re Two "S"*

3   *Corporation)*, 875 F. 2d 240, 243 (9th Circ. 1989) (holding that best evidence of value is the price

4   reached in a commercially reasonable sale).  In other words, the proposed Sale will, by definition,

5   realize the full economic value of the secured creditors' interests in the property since claims are

6   only allowed as secured claims under §506(a) to the extent there is equity in the creditors'

7   collateral.  *In re Terrace Gardens Park Partnership,* 96 B.R. 707 (Bankr. W.D. Tex 1989).

8          Furthermore, the Trustee intends to notify all interested parties through the notice of

9   Motion.  Any party objecting to such sale may file their objection with the Court and be heard at

10  the hearing on the Motion.  If there is no objection, the parties will be deemed to have consented

11  to the sale of the Property.  *See Veltman v. Whetzal*, 93 F.3d 517 (8th Cir. 1996) (failure to object

12  to proposed sale, coupled with agreement authorizing sale free of interest, constituted consent);

13  *Elliot, supra* (implied consent found)*; In re Tabore, Inc.,* 175 B.R. 855 (Bankr. D. N.J. 1994)

14  (failure to object to notice of sale or attend hearing deemed consent to sale for purposes of § 363);

15  *In re Shary*, 152 B.R. 724 (Bankr. N.D. Ohio 1993) (state's failure to object to transfer of liquor

16  license constituted consent to sale).  Thus, pursuant to § 363(f)(2), the Trustee may sell the

17  Property free and clear of any interest of entities other than the bankruptcy estate because the

18  noticed parties will be deemed to have consented to the sale of the Property if they make no

19  objections to the Sale.

20         Finally, the Trustee will pay all liens in full from the Sale.  As such, the Property may be

21  sold free and clear of all liens under § 363(f)(3).

22         Bankruptcy Code § 363(f)(3) and (4) are satisfied and the Property may be sold free and

23  clear of all liens, claims and interests.

24         **G.    Waiver of the Fourteen-Day Period for Effectiveness of Sale Order**

25         Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other

26  than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the

27  court orders otherwise." FRBP 6004(h).  The legislative history to Rule 6004 provides:

28

2620374.1                                          10

The court may, in its discretion, order that Rule 6004(g) [now 6004(h)] is not applicable so that the property may be used, sold, or leased immediately in accordance with the order entered by the court.  Alternatively, the court may order that the stay under Rule 6004(g) [now 6004(h)] is for a fixed period less than 10 [now 14] days.

Given the notice and full opportunity to object, respond, or participate in Overbid Procedures presented by this Motion, the Trustee believes that, unless there are objections to the Motion that are not consensually resolved, it is appropriate and good cause exists for the Court to order that Rule 6004(h) is not applicable, and the Property may be sold immediately. Accordingly, the Trustee requests that the Court authorize the Sale to be effectuated immediately upon entry of the order approving this Motion.

## H.    Good Faith Purchaser Determination

The proposed Buyers are good faith purchasers entitled to the protections of § 363(m). "Though the Bankruptcy Code and Rules do not provide a definition of good faith, courts generally have followed traditional equitable principles in holding that a good faith purchaser is one who buys 'in good faith' and 'for value.'" *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992) (citing *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3rd Cir. 1986).  Lack of good faith may be shown by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992) (*quoting In re Suchy*, 786 F.2d 900, 902 (9th Cir. 1985)); *see also In re Indus. Valley Refrigeration & Air Conditioning Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987) (good faith requirement "focuses principally on the element of special treatment of the debtor's insiders in the sale transaction").

In this case, the proposed Sale is not predicated on fraud or collusion, and the Sale is not to an insider, nor have any insiders received any special treatment or consideration.  *See* Declarations.  Based upon the foregoing, the Trustee submits that the Motion satisfies the standards for approval of a sale of the Property outside of the ordinary course of business pursuant

to § 363(b), and good cause exists to make a finding that the Buyers or any overbidder is purchasing the Property in "good faith" pursuant to § 363(m).

### I.    Tax Consequences

It is anticipated that there will be no tax liability (including capital gains) to the Estate generated from the sale of the Property.

### J.    Marketing Efforts

As detailed in the Declaration of Jan Neiman of Neiman Realty, Inc., filed herewith, the Property was listed on a variety of real property websites.  The Property was shown to prospective buyers and Ms. Neiman received 29 inquiries.  The Trustee believes the Property was properly marketed.

## IV.

## CONCLUSION

Based on the foregoing, the Trustee respectfully requests that the Court enter an order that provides that:

1.    The Motion is granted;

2.    The Trustee is authorized to enter into the Purchase Agreement;

3.    The Trustee is authorized to sell the Property outside the ordinary course of business;

4.    The Trustee is authorized to sell free and clear of all liens;

5.    The Trustee is authorized to sign all documents necessary to consummate the Sale and close escrow, including, but not limited to, any grant deed and escrow instructions;

6.    The Trustee is authorized to pay the costs of sale;

7.    The Trustee is authorized to pay all liens;

8.    The Trustee is authorized to pay the commission of $36,000.00 to the Broker;

9.    Michael P. Spagnola and Dianna L. Spagnola, or any successful overbidder, is/are entitled to the protections set forth in 11 U.S.C. § 363(m) as a good faith purchaser;

10.    The 14 day stay regarding the effectiveness of the order shall be waived; and

11.    Such other further relief as the Court may deem just and proper.

1

2      DATED: April 3, 2018

3

4                                          By:   */s/ David M. Goodrich*

5                                                David M. Goodrich
                                                 Chapter 7 Trustee
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF DAVID M. GOODRICH

I, David M. Goodrich, declare:

1.     I am the duly appointed, qualified and acting Chapter 7 Trustee of the bankruptcy estate ("Estate") of the debtor Crestalliance, LLC ("Debtor").

2.     I am an individual over the age of eighteen, and I am the duly appointed, qualified and acting Chapter 7 trustee of the bankruptcy estate of the Debtor.

3.     Unless otherwise stated, the facts set forth in this declaration are personally known to me and if called as a witness, I could and would competently testify thereto.

4.     Prior to the Petition Date, the Debtor acquired real property located at 592 East 6th Street, Azusa, California  91702 ("Property").

5.     I discovered the Debtor entered into a purchase contract for the Property for $595,000.  During my negotiations with the Debtor's buyer, I received additional offers.

6.     On or about February 22, 2018, Michael P. Spagnola and Dianna L. Spagnola ("Buyers") submitted the Purchase Contract whereby the Buyers have agreed to buy the Property for the sum of $600,000.00, on the terms and conditions stated in the written offer titled *Residential Income Property Purchase Agreement And Joint Escrow Instructions, Seller Counter Offer No. 1 and Seller's Addendum Re Sale Of Real Estate By Chapter 7 Trustee* (collectively referred to herein as "Purchase Agreement"), attached hereto as **Exhibit 1**.  The Buyers' offer is the highest offer that I have received.

7.     To the best of my knowledge, I do not have any connection or relationship with the Buyers.  Further, the Buyers have no connection to the Debtor.

8.     I believe the Sale will generate approximately $126,058.00 of net proceeds for the Estate.

9.     I believe that it is in the best interest of the Estate to proceed with the Sale to the Buyers, subject to overbid, for the sum of $600,000.00.

/ / /

/ / /

/ / /

1    I declare under penalty of perjury under the laws of the United States of America that the

2  foregoing is true and correct.

3    Executed this 3rd day of April, 2018, at Costa Mesa, California.

4

5                                    /s/ David M. Goodrich
6                                    David M. Goodrich
                                     Chapter 7 Trustee

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF MICHAEL P. SPAGNOLA

I, Michael P. Spagnola, declare and state as follows:

1.      I am over the age of eighteen.  I have personal knowledge of the information contained herein and if called upon to testify, I could and would competently testify thereto.

2.      I am one of the proposed buyers for the real property located at and commonly known as 592 East 6th Street, Azusa, California 91702.

3.      To the best of my knowledge, Dianna Spagnola and I do not have any relation to the Chapter 7 Trustee David M. Goodrich, his agents and employees, or any judge of the United States Bankruptcy Court for the Central District of California, the United States Trustee, or any person currently employed in the Office of the United States Trustee.

4.      The price we have agreed to pay the Trustee was reached during an arms-length negotiation with the Trustee through his agents.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on March 29, 2018 at _Sierra Madre_, California.

Michael P. Spagnola

1                             **DECLARATION OF JAN NEIMAN**

2      I, Jan Neiman, declare as follows:

3      1.     I am an individual over the age of eighteen, and I am a licensed real estate agent

4 with Neiman Realty, Inc., a licensed real estate broker.

5      2.     The Trustee contacted me and the Firm to assist him in selling the real property

6 located at and commonly known 592 East 6th Street, Azusa California 91702 ("Property").

7      3.     The Property was initially listed at a price of $600,000.00. We have marketed and

8 exposed the listing to other brokers and potential buyers through a variety of real property sales

9 websites.

10      4.     To date, potential buyers have toured the Property. I have also communicated with

11 approximately other parties who made inquiries regarding the Property through telephone calls

12 from signs, internet inquiries, and view advertising calls.

13      5.     Based upon my research and opinion of value, I believe $600,000.00 represents a

14 fair value for this Property.

15      I declare under penalty of perjury under the laws of the United States of America that the

16 foregoing is true and correct.

17      Executed this 31 day of March, 2018, at Van Nuys, California.

18

19                                    Jan Neiman

20

21

22

23

24

25

26

27

28

2620374.1                             17

# EXHIBIT 1

DocuSign Envelope ID: EB91933E-B1D5-4D8B-92B4-607AA6F66F60



CALIFORNIA
ASSOCIATION
OF REALTORS®

**BUYER COUNTER OFFER  No. 1**
(C.A.R. Form BCO, 11/14)

*Podley* PROPERTIES

Date ___ **March 1, 2018** ___

This is a counter offer to the: ☒ Seller Counter Offer No. __1__ , ☐ Seller Multiple Counter Offer No. ____ , ☐ or Other _____ ("Offer"),
dated **February 28, 2018** , on property known as _____ **592 E. 6th St., Azusa, CA 91702** _____ ("Property"),
between ___ **Michael P. Spagnola, Dianna L. Spagnola** ___ ("Buyer") and _____ ("Seller").

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:

    A. **Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer or an addendum.**

    B. **Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer.**

    C. **OTHER TERMS:** *1) Buyer shall have up to 21-days to remove the physical inspection contingency. 2) Close of escrow*

    *shall be 21-days or sooner, after final court approval of the offer has been granted. 3) All other terms to remain the*

    *same.*

    _____

    _____

    _____

    _____

    _____

    _____

    D. **The following attached addenda are incorporated into this Buyer Counter offer:** ☐ Addendum No. _____
    ☐ _____ ☐ _____

2. **EXPIRATION:** This Buyer Counter Offer shall be deemed revoked and the deposits, if any, shall be returned:

    A. Unless by 5:00pm on the third Day After the date it is signed in paragraph 3 (if more than one signature then, the last signature date)(or by _____ ☐ AM ☐ PM on _____ (date) (i) it is signed in paragraph 4 by Seller and (ii) a copy of the signed Buyer Counter Offer is personally received by Buyer or _____ , who is authorized to receive it.

    OR B. If Buyer withdraws it in writing (CAR Form WOO) anytime prior to Acceptance.

3. **OFFER: BUYER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.**

    Buyer _Michael P. Spagnola (DocuSigned)_     _Michael P. Spagnola_ Date _3/2/2018_
    Buyer _Dianna L. Spagnola_     _Dianna L. Spagnola_ Date _3/2/2018_

4. **ACCEPTANCE: I/WE** accept the above Buyer Counter Offer **(If checked** ☐ **SUBJECT TO THE ATTACHED COUNTER OFFER)** and acknowledge receipt of a Copy.

    Seller _____   Date _3/2/18_  Time _2:21_ ☐ AM/☒ PM
    Seller _____   Date _____  Time _____ ☐ AM/☐ PM

**CONFIRMATION OF ACCEPTANCE:**

( _____ / _____ ) (Initials) **Confirmation of Acceptance:** A Copy of Signed Acceptance was personally received by Buyer or Buyer's authorized agent as specified in paragraph 2A on (date) _____ at _____ ☐ AM/☐ PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document.**

© 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX  ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California  0020

Reviewed by _____ Date _____

BCO 11/14 (PAGE 1 OF 1)

**BUYER COUNTER OFFER (BCO PAGE 1 OF 1)**

CALIFORNIA
ASSOCIATION
OF REALTORS ®

**SELLER COUNTER OFFER No. 1**
May not be used as a multiple counter offer.
(C.A.R. Form SCO, 11/14)

Date *February 28, 2018*

This is a counter offer to the: X  Purchase Agreement,   Buyer Counter Offer No. ____ , or   Other                                      ("Offer"),
dated   *February 22, 2018*   , on property known as                     *592 E. 6th Street, Azusa, CA  91702*                    ("Property"),
between                                    *Michael P. Spagnola, Dianna L. Spagnola*                                         ("Buyer")
and                     *David Goodrich, Chapter 7 Trustee, for the Estate of Crestalliance, LLC*                             ("Seller").

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final
   agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer or an addendum.
   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in
   the original Offer.

   C. **OTHER   TERMS:** *7D(8) Buyer*

      *Omit #31*

   D. The following attached addenda are incorporated into this Seller Counter offer: X  Addendum No.

2. **EXPIRATION:** This Seller Counter Offer shall be deemed revoked and the deposits, if any, shall be returned:
   A. Unless by 5:00pm on the third Day After the date it is signed in paragraph 4 (if more than one signature then, the last signature
   date)(or by    AM  PM on         (date) (i) it is signed in paragraph 5 by Buyer and (ii) a copy of the signed Seller
   Counter Offer is personally received by Seller or          , who is authorized to receive it.
   OR B. If Seller withdraws it anytime prior to Acceptance (CAR Form WOO may be used).
   OR C. If Seller accepts another offer prior to Buyer's Acceptance of this counter offer.

3. **MARKETING TO OTHER BUYERS:** Seller has the right to continue to offer the Property for sale. Seller has the right to accept any
   other offer received, prior to Acceptance of this Counter Offer by Buyer as specified in 2A and 5. In such event, Seller is advised to
   withdraw this Seller Counter Offer before accepting another offer.

4. **OFFER: SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.**
   Seller                                          *David Goodrich, Chapter 7 Trustee, for the*  Date  *2/28/18*
   Seller                                                                                        Date

5. **ACCEPTANCE:** I/WE accept the above Seller Counter Offer (If checked X  SUBJECT TO THE ATTACHED COUNTER OFFER)
   and acknowledge receipt of a Copy.
   Buyer *Michael P. Spagnola*                    *Michael P. Spagnola* Date *2/28/2018* Time          AM   PM
   Buyer                                          *Dianna L. Spagnola* Date *2/28/2018* Time          AM   PM
   **CONFIRMATION OF ACCEPTANCE:**

   (____ / ____) (Initials) **Confirmation of Acceptance:** A Copy of Signed Acceptance was personally received by Seller, or Seller's
   authorized agent as specified in paragraph 2A on (date)          at          AM   PM. A binding Agreement is
   created when a Copy of Signed Acceptance is personally received by Seller or Seller's authorized agent whether or not
   confirmed in this document.

© 2014, California Association of REALTORS®, Inc
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.)  NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY
OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE
TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020          Reviewed by          Date

**SCO 11/14 (PAGE 1 OF 1)**

**SELLER COUNTER OFFER (SCO PAGE 1 OF 1)**

Nriman Realty 11205 Collins St Sherman Oaks, CA 91401                              Phone  (818)516-3779        Fax  (818)785-5925        592 E. 6th St.
Jan Nriman                    Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: BE9B9D79-04F4-4AAB-97AA-28EE63EAAE25



## DISCLOSURE REGARDING
## REAL ESTATE AGENCY RELATIONSHIP
(Selling Firm to Buyer)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/14)



☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(k) and (m).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.

To the Buyer and the Seller:
  (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
  (b) A duty of honest and fair dealing and good faith.
  (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.

To the Buyer and the Seller:
  (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
  (b) A duty of honest and fair dealing and good faith.
  (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.

An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
  (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
  (b) Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).

| ☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant | Michael P. Spagnola | Date | 2/22/2018 |
|---|---|---|---|
| ☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant | Michael Spagnola | Date | 2/22/2018 |

Agent  *Podley Properties* _____ Real Estate Broker (Firm) _____ BRE Lic. # 01852348

By _Luther Tsinoglou_ _____ BRE Lic. # 01135433 _____ Date 02/22/2018
(Salesperson or Broker-Associate)    Luther Tsinoglou

Agency Disclosure Compliance (Civil Code §2079.14):
• When the listing brokerage company also represents Buyer/Tenant: The Listing Agent shall have one AD form signed by Seller/Landlord and a different AD form signed by Buyer/Tenant.
• When Seller/Landlord and Buyer/Tenant are represented by different brokerage companies: (i) the Listing Agent shall have one AD form signed by Seller/Landlord and (ii) the Buyer's/Tenant's Agent shall have one AD form signed by Buyer/Tenant and either that same or a different AD form presented to Seller/Landlord for signature prior to presentation of the offer. If the same form is used, Seller may sign here:

| Seller/Landlord | 2/12-61-2 Date | Seller/Landlord | Date |
|---|---|---|---|

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Reviewed by _____ Date _____

AD REVISED 12/14 (PAGE 1 OF 2)

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

Podley Properties - Sierra Madre, 30 N. Baldwin Ave. Sierra Madre CA 91024     Phone: (626)507-3029     Fax (626)408-1402     592 E. 6th
Luther Tsinoglou     Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: BE9B9D79-04F4-4AAB-97AA-28EE63EAAE25

## CIVIL CODE SECTIONS 2079.24 (2079.16 APPEARS ON THE FRONT)

2079.13 As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings: (a) "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. (b) "Associate licensee" means a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions. (c) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee. (d) "Commercial real property" means all real property in the state, except single-family residential real property, dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, mobilehomes, as defined in Section 798.3, or recreational vehicles, as defined in Section 799.29. (e) "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. (f) "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer. (g) "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. (h) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. (i) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. (j) "Offer to purchase" means a written contract executed by a buyer acting through a selling agent that becomes the contract for the sale of the real property upon acceptance by the seller. (k) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property that constitutes or is improved with one to four dwelling units, any commercial real property, any leasehold in these types of property exceeding one year's duration, and mobilehomes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. (l) "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase. (m) "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. (n) "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor. (o) "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. (p) "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.

2079.14 Listing agents and selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as provided in subdivision (c), shall obtain a signed acknowledgement of receipt from that seller or buyer, except as provided in this section or Section 2079.15, as follows: (a) The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. (b) The selling agent shall provide the disclosure form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision (a). (c) Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared by the selling agent may be furnished to the seller (and acknowledgement of receipt obtained for the selling agent from the seller) by the listing agent, or the selling agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgement of receipt is required. (d) The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except that if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day after the selling agent receives the offer to purchase from the buyer.

2079.15 In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an agent, shall set forth, sign, and date a written declaration of the facts of the refusal.

2079.16 Reproduced on Page 1 of this AD form.

2079.17 (a) As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. (b) As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller.
(c)  The confirmation required by subdivisions (a) and (b) shall be in the following form.

_____(DO NOT COMPLETE. SAMPLE ONLY)_____ is the agent of (check one): ☐ the seller exclusively; or ☐ both the buyer and seller.
(Name of Listing Agent)

_____(DO NOT COMPLETE. SAMPLE ONLY)_____ is the agent of (check one): ☐ the buyer exclusively; or ☐ the seller exclusively; or
(Name of Selling Agent if not the same as the Listing Agent)                                    ☐ both the buyer and seller.

(d)  The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

2079.18 No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.
2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.
2079.21 A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
2079.22 Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not, of itself, make that agent a dual agent.
2079.23 A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.
2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
● 525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by ___JM___ Date _1-28-18_

AD REVISED 12/14 (PAGE 2 OF 2)

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

CALIFORNIA
ASSOCIATION
OF REALTORS®

# POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER - DISCLOSURE AND CONSENT
(C.A.R. Form PRBS, 11/14)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: (a) Broker, without the prior written consent of the Buyer, will not disclose to seller that the Buyer is willing to pay a price greater than the offered price; (b) Broker, without the prior written consent of the seller, will not disclose to the buyer that seller is willing to sell property at a price less than the listing price; and (c) other than as set forth in (a) and (b) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller Disclosure and Consent and agrees to the agency possibilities disclosed.**

Seller _____ Trustee Date 2/28/18
Seller _____ Date _____
Buyer Michael P. Spagnola Michael P. Spagnola Date 2/22/2018
Buyer _____ Dianna L. Spagnola Date 2/22/2018
Real Estate Broker (Firm) *Neiman Realty* CalBRE Lic # 00786172 Date 3-5-2018
By _____ CalBRE Lic # 00680498 Date _____

Real Estate Broker (Firm) *Podley Properties* CalBRE Lic # 01852348 Date 02/22/2018
By Luther Tsinoglou CalBRE Lic # 01135433 Date 02/22/2018
*Luther Tsinoglou*

© 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____



**PRBS 11/14 (PAGE 1 OF 1)**
## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)

DocuSign Envelope ID: BE9B9D79-04F4-4AAB-97AA-28EE63EAAE25

CALIFORNIA ASSOCIATION OF REALTORS®

**RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS**
(C.A.R. Form RIPA, Revised 12/15)

*Podley* PROPERTIES

Date Prepared: _February 22, 2018_

1. **OFFER:**
   A. THIS IS AN OFFER FROM _Michael P. Spagnola, Dianna L. Spagnola_ ("Buyer").
      [X] Individual(s), [ ] A Corporation, [ ] A Partnership, [ ] An LLC, [ ] An LLP, [ ] Other ___
   B. THE REAL PROPERTY to be acquired is _592 E. 6th St._, situated in _Azusa_ (City), _Los Angeles_ (County), California, _91702_ (Zip Code), Assessor's Parcel No. _8612-004-00_ ("Property").
   C. THE PURCHASE PRICE offered is _Six Hundred Thousand_
      Dollars $ 600,000.00.
   D. CLOSE OF ESCROW shall occur on [ ] (date) (or [X] _45_ Days After Acceptance).
   E. Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

2. **AGENCY:**
   A. DISCLOSURE: The Parties each acknowledge receipt of a [X] "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
   B. CONFIRMATION: The following agency relationships are hereby confirmed for this transaction:
      Listing Agent _Neiman Realty_ (Print Firm Name) is the agent of (check one):
      [X] the Seller exclusively; or [ ] both the Buyer and Seller.
      Selling Agent _Podley Properties_ (Print Firm Name) (if not the same as the Listing Agent) is the agent of (check one): [X] the Buyer exclusively; or [ ] the Seller exclusively; or [ ] both the Buyer and Seller.
   C. POTENTIALLY COMPETING BUYERS AND SELLERS: The Parties each acknowledge receipt of a [X] "Potential Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

3. **FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. INITIAL DEPOSIT: Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 18,000.00
      (1) Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds transfer, [ ] cashier's check, [ ] personal check, [ ] other ___ within 3 business days after Acceptance (or ___);
      OR (2) [ ] Buyer Deposit with Agent: Buyer has given the deposit by personal check (or ___) to the agent submitting the offer (or to ___), made payable to ___. The deposit shall be held uncashed until Acceptance and then deposited with Escrow Holder within 3 business days after Acceptance (or ___).
      Deposit checks given to agent shall be an original signed check and not a copy.
      (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
   B. INCREASED DEPOSIT: Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . $ ___
      within ___ Days After Acceptance (or ___).
      If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form RID) at the time the increased deposit is delivered to Escrow Holder.
   C. [X] ALL CASH OFFER: No loan is needed to purchase the Property. This offer is NOT contingent on Buyer obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or [X] Buyer shall, within 3 (or ___) Days After Acceptance, Deliver to Seller such verification.
   D. LOAN(S):
      (1) FIRST LOAN: in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ ___
          This loan will be conventional financing or [ ] FHA, [ ] VA, [ ] Seller financing (C.A.R. Form SFA), [ ] assumed financing (C.A.R. Form AFA), [ ] subject to financing, [ ] Other ___. This loan shall be at a fixed rate not to exceed ___ % or, [ ] an adjustable rate loan with initial rate not to exceed ___ %. Regardless of the type of loan, Buyer shall pay points not to exceed ___ % of the loan amount.
      (2) [ ] SECOND LOAN in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ ___
          This loan will be conventional financing or [ ] Seller financing (C.A.R. Form SFA), [ ] assumed financing (C.A.R. Form AFA), [ ] subject to financing, [ ] Other ___. This loan shall be at a fixed rate not to exceed ___ % or, [ ] an adjustable rate loan with initial rate not to exceed ___ %. Regardless of the type of loan, Buyer shall pay points not to exceed ___ % of the loan amount.
      (3) FHA/VA: For any FHA or VA loan specified in 3D(1), Buyer has 17 (or ___) Days After Acceptance to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a part of this transaction.
   E. ADDITIONAL FINANCING TERMS: _Buyer reserves the option to secure financing at no cost to seller._
   F. BALANCE OF DOWN PAYMENT OR PURCHASE PRICE in the amount of . . . . . . . . . . . . . . . . . . . . . $ 582,000.00
      to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
   G. PURCHASE PRICE (TOTAL): . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 600,000.00

Buyer's Initials ( MPS )( IMG )   Seller's Initials ( DC )( ___ )

© 2015, California Association of REALTORS®, Inc.
RIPA REVISED 12/15 (PAGE 1 OF 11)

**RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT (RIPA PAGE 1 OF 11)**

Podley Properties - Sierra Madre, 30 N. Baldwin Ave, Sierra Madre CA 91024   Phone: (626)507-3029   Fax: (626)355-1402   592 E. 6th
Luther Tsinoglou   Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: BE9B9D79-04F4-4AAB-97AA-28EE63EAAE25

Property Address: *592 E. 6th St., Azusa, CA  91702*                                      Date: *February 22, 2018*

**H.** **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within 3 (or ___ ) Days After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ( ☐ Verification attached.)

**I.** **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☒ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 19B(3), in writing, remove the appraisal contingency or cancel this Agreement within 17 (or ___ ) Days After Acceptance.

**J.** **LOAN TERMS:**

(1) **LOAN APPLICATIONS:** Within 3 (or ___ ) Days After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)

(2) **LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs are **not contingencies** of this Agreement.

(3) **LOAN CONTINGENCY REMOVAL:**

Within 21 (or ___ ) Days After Acceptance, Buyer shall, as specified in paragraph 19, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

(4) ☒ **NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

(5) **LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

(6) **ASSUMED OR SUBJECT TO FINANCING:** Seller represents that Seller is not delinquent on any payments due on any loans. If the Property is acquired subject to an existing loan, Buyer and Seller are advised to consult with legal council regarding the ability of an existing lender to call the loan due, and the consequences thereof.

**K.** **BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4.** **SALE OF BUYER'S PROPERTY:**

**A.** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.

**OR B.** ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5.** **ADDENDA AND ADVISORIES:**

**A.** **ADDENDA:**

| | |
|---|---|
| ☐ Addendum # _____ (C.A.R. Form ADM) | |
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☒ Court Confirmation Addendum (C.A.R. Form CCA) |
| ☐ Septic, Well and Property Monument Addendum (C.A.R.  Form SWPI) | |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other _____ |

**B.** **BUYER AND SELLER ADVISORIES:**

| | |
|---|---|
| | ☒ Buyer's Inspection Advisory (C.A.R. Form BIA) |
| ☐ Probate Advisory (C.A.R. Form PA) | ☒ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ REO Advisory (C.A.R. Form REO) |
| ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ Other _____ |

**6.** **OTHER TERMS:** *Court date has not been set as of the writing of this purchase contract.*

_____

_____

**7.** **ALLOCATION OF COSTS**

**A.** **INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed, in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**

(1) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report, including tax ☒ environmental ☐ Other: _____
prepared by _____

(2) ☐ Buyer ☒ Seller shall pay for the following Report _____
prepared by _____

(3) ☐ Buyer ☐ Seller shall pay for the following Report _____
prepared by _____

Buyer's Initials ( MPS )( MG )                     Seller's Initials ( YG )( _____ )

RIPA REVISED 12/15 (PAGE 2 OF 11)

**RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT (RIPA PAGE 2 OF 11)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    592 E. 6th

DocuSign Envelope ID: BE9B9D79-04F4-4AAB-97AA-28EE63EAAE25

Property Address: *592 E. 6th St., Azusa, CA  91702*                          Date: *February 22, 2018*

**B. GOVERNMENT REQUIREMENTS AND RETROFIT:**
(1) ☐ Buyer ☒ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.
(2) (i) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.
 (ii) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.
 (iii) Buyer shall be provided, within the time specified in paragraph 19A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.
(3) ☐ Buyer ☐ Seller shall pay for installation of approved fire extinguisher(s), sprinkler(s), and hose(s), if required by Law, which shall be installed prior to Close Of Escrow. Prior to Close Of Escrow, Seller shall provide Buyer a written statement of compliance, if required by Law.
(4) ☐ Buyer ☐ Seller shall pay for installation of drain cover and anti-entrapment device or system for any pool or spa meeting the minimum requirements permitted by the U.S. Consumer Products and Safety Commission.

**C. ESCROW AND TITLE:**
(1) (a) ☒ Buyer ☒ Seller shall pay escrow fee *Each party to pay their own escrow fees  50/50* 
 (b) Escrow Holder shall be *Premium Escrow or sellers' choice* .
 (c) The Parties shall, within 5 (or ___ ) Days After receipt, sign and return Escrow Holder's general provisions.
(2) (a) ☐ Buyer ☒ Seller shall pay for owner's title insurance policy specified in paragraph 18E 
 (b) Owner's title policy to be issued by *Sellers Choice or Lawyer's Title* .
 (Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

**D. OTHER COSTS:**
(1) ☐ Buyer ☒ Seller shall pay County transfer tax or fee 
(2) ☐ Buyer ☒ Seller shall pay City transfer tax or fee 
(3) ☐ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee 
(4) Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.
(5) ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.
(6) Buyer to pay for any HOA certification fee.
(7) ☐ Buyer ☐ Seller shall pay for any private transfer fee 
(8) ☐ Buyer ☒ Seller shall pay for *City of Azusa City Occupancy Inspection report.* 
(9) ☐ Buyer ☐ Seller shall pay for 
(10) ☐ Buyer ☐ Seller shall pay for the cost, not to exceed $ _____, of a ☐ standard ☐ upgraded one-year home warranty plan, issued by _____, with the following optional coverages: ☐ Air Conditioner ☐ Pool/Spa ☐ Other: 
 Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.
 OR ☒ Buyer waives the purchase of a home warranty policy. Nothing in this paragraph precludes Buyer's purchasing a home warranty policy during the term of the Agreement.

**8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 8B, C or D.
**B. ITEMS INCLUDED IN SALE:**
(1) All EXISTING fixtures and fittings that are attached to the Property;
(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers and security systems/alarms.
(3) Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller, except (i) _____ and (ii) the items and systems identified pursuant to 8B(4).
(4) LEASED OR LIENED ITEMS AND SYSTEMS: Seller shall, within the time specified in paragraph 19A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 19B and C.
(5) Except as otherwise specified or disclosed, all items included shall be transferred free and clear of liens and encumbrances and without Seller warranty regardless of value.
(6) A complete inventory of all personal property of Seller currently used in the operation of the Property and included in the purchase price shall be delivered to Buyer within the time specified in paragraph 19.
(7) Seller shall deliver title to the personal property by Bill of Sale, free of all liens and encumbrances, and without warranty of condition.
(8) As additional security for any note in favor of Seller for any part of the purchase price, Buyer shall execute a UCC-1 Financing Statement to be filed with the Secretary of State, covering the personal property included in the purchase, replacement thereof, and insurance proceeds.
**C. ITEMS EXCLUDED FROM SALE:** 

**D. OTHER ITEMS:** Existing integrated phone and home automation systems, including necessary components such as intranet and Internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are (☐ are NOT) included in the sale.

Buyer's Initials (  MLPS  )(  MG  )                                    Seller's Initials (  TG  )(  _____  )

DocuSign Envelope ID: BE9B9D79-04F4-4AAB-97AA-28EE63EAAE25

Property Address: *592 E. 6th St., Azusa, CA  91702*                    Date: *February 22, 2018*

9.  **SECURITY DEPOSITS:** Security deposits, if any, to the extent they have not been applied by Seller in accordance with any rental agreement and current Law, shall be transferred to Buyer on Close Of Escrow. Seller shall notify each tenant, in compliance with the California Civil Code.

10. **CLOSING AND POSSESSION:**

    A.  Buyer intends (or ☐ does not intend) to occupy any unit in the Property as Buyer's primary residence.

    B.  **Seller-occupied or vacant property:** Possession shall be delivered to Buyer: (i) ☐ at 6 PM or ( _____ ☐ AM/ ☐ PM) on the date of Close Of Escrow; (ii) ☐ no later than ____ calendar days after Close Of Escrow; or (iii) ☐ at ____ ☐ AM/ ☐ PM on _____,

    C.  **Seller Remaining in Possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, ☐ C.A.R. Form RLAS for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

    D.  **Tenant occupied units:** Possession and occupancy, subject to the rights of tenants under existing leases, shall be delivered to Buyer on Close Of Escrow.

    E.  At Close Of Escrow: **(i)** Seller assigns to Buyer any assignable warranty rights for items included in the sale; and **(ii)** Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.

    F.  At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

11. **STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

    A.  **LEAD-BASED PAINT HAZARD DISCLOSURES:**

        (1) Seller shall, within the time specified in paragraph 19, deliver to Buyer, if required by Law, Federal Lead-Based Paint Disclosures and pamphlet ("Lead Disclosures"). If the Lead Disclosures are delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days** After Delivery in person, or **5 Days** After delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent. (Lead Disclosures sent by mail must be sent certified mail or better.)

        (2) Buyer shall, within the time specified in paragraph 19, return a Signed Copy of the Lead Disclosure to Seller.

    B.  **NATURAL AND ENVIRONMENTAL HAZARDS:** Within the time specified in paragraph 19, Seller shall, if required by Law: **(i)** deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; and **(ii)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

    C.  **WITHHOLDING TAXES:** Within the time specified in paragraph 19A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).

    D.  **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

    E.  **NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at http://www.npms.phmsa.dot.gov/. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.

    F.  **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

        (1) SELLER HAS: 7 (or _3_ ) Days After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).

        (2) If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has 3 (or ___ ) Days After Acceptance to request from the HOA (C.A.R. Form HOA1): **(i)** Copies of any documents required by Law; **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; and **(v)** the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 19B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

12. **RESIDENTIAL 1-4 PROPERTIES:**

    A.  Seller shall, within the time specified in paragraph 19A, Deliver to Buyer: **(i)** if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and **(ii)** unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD).

    B.  Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Listing Agent, if any, has completed and signed the Listing Broker section(s), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Broker, if any, from the obligation to (i)

Buyer's Initials ( _____ )( _____ )                    Seller's Initials ( _____ )( _____ )

**RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT (RIPA PAGE 4 OF 11)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                    592 E. 6th

Property Address: *592 E. 6th St., Azusa, CA  91702*                                          Date: *February 22, 2018*

conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Broker.

C. **Note to Buyer and Seller:** Waiver of Statutory and Lead Disclosures is prohibited by Law.

D. Within the time specified in paragraph 19A, (i) Seller, unless exempt from the obligation to provide a TDS, shall, within the time specified in paragraph 19A, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ) (ii) if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with a Exempt Seller Disclosure (C.A.R. Form ESD).

E. Buyer shall, within the time specified in paragraph 19B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.

F. In the event Seller or Listing Broker, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**

G. If any disclosure or notice specified in paragraph 12A, or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days After Delivery** in person, or **5 Days After Delivery** by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent.

13. **SELLER DOCUMENTATION AND ADDITIONAL DISCLOSURE:** Within the time specified in paragraph 19, Seller shall disclose, make available or Deliver, as applicable, to Buyer the following information.

A. **RENTAL/SERVICE AGREEMENTS:** Seller shall make available to Buyer for inspection and review: (i) all current leases, rental agreements, service contracts, and other agreements pertaining to the operation of the Property; (ii) a rental statement including names of tenants, rental rates, period of rental, date of last rent increase, security deposits, rental concessions, rebates or other benefits, if any, and a list of delinquent rents and their duration. Seller represents that no tenant is entitled to any rebate, concession, or other benefit, except as set forth in these documents. Seller represents that the documents to be furnished are those maintained in the ordinary and normal course of business.

B. **INCOME AND EXPENSE STATEMENTS:** Seller shall make available to Buyer the books and records for the Property, including a statement of income and expense for the 12 months preceding Acceptance. Seller represents that the books and records are those maintained in the ordinary and normal course of business, and used by Seller in the computation of federal and state income tax returns.

C. ☒ **TENANT ESTOPPEL CERTIFICATES:** (If checked) Seller shall Deliver to Buyer tenant estoppel certificates (C.A.R. Form TEC) completed by Seller or Seller's agent, and signed by tenants, acknowledging: (i) that tenants' rental or lease agreements are unmodified and in full force and effect (or if modified, stating all such modifications); (ii) that no lessor defaults exist; and (iii) stating the amount of any prepaid rent or security deposit.

D. **SURVEY, PLANS, AND ENGINEERING DOCUMENTS:** Seller shall, at no cost to Buyer, Deliver to Buyer Copies of surveys, plans, specifications, and engineering documents, if any, prepared on Seller's behalf or in Seller's possession.

E. **PERMITS:** If in Seller's possession, Seller shall Deliver to Buyer Copies of all permits and approvals concerning the Property, obtained from any governmental entity, including, but not limited to, certificates of occupancy, conditional use permits, development plans, and licenses and permits pertaining to the operation of the Property.

F. **STRUCTURAL MODIFICATIONS:** Seller shall disclose to Buyer in writing any known structural additions or alterations to, or the installation, alteration, repair or replacement of, significant components of the structure(s) upon the Property.

G. **SELLER REPRESENTATION:** Seller represents that Seller has no actual knowledge: (i) of any current pending lawsuit(s), investigation(s), inquiry(ies), action(s), or other proceeding(s) affecting the Property or the right to use and occupy it; (ii) of any unsatisfied mechanic's or materialman lien(s) affecting the Property; and (iii) that any tenant of the Property is the subject of a bankruptcy. If Seller receives any such notice prior to Close Of Escrow, Seller shall immediately notify Buyer.

H. **GOVERNMENTAL COMPLIANCE:**

(1) Seller shall disclose to Buyer any improvements, additions, alterations, or repairs to the Property made by Seller, or known to Seller to have been made, without required governmental permits, final inspections, and approvals.

(2) Seller shall disclose to Buyer if Seller has actual knowledge of any notice of violations of Law filed or issued against the Property.

14. **SUBSEQUENT DISCLOSURES:** In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly Deliver a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**

15. **CHANGES DURING ESCROW:**

A. Prior to Close Of Escrow, Seller may engage in the following acts ("Proposed Changes"), subject to Buyer's rights in paragraph 15B: (i) rent or lease any vacant unit or other part of the premises; (ii) alter, modify or extend any existing rental or lease agreement; (iii) enter into, alter, modify or extend any service contract(s); or (iv) change the status of the condition of the Property.

B. (1) At least 7 (or ____ ) Days Prior to any Proposed Changes, Seller shall Deliver written notice to Buyer of such Proposed Changes.

(2) Within 5 (or ____ ) Days After receipt of such notice, Buyer, in writing, may give Seller notice of Buyer's objection to the Proposed Changes in which case Seller shall not make the Proposed Changes.

16. **CONDITION OF PROPERTY:** Unless otherwise agreed in writing: (i) the Property is sold (a) "AS-IS" in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close Of Escrow.

A. Seller shall, within the time specified in paragraph 19A; (i) DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, (ii) disclose the number of units on the Property which have been legally approved, if known by Seller and (iii) make any and all other disclosures required by Law.

B. Buyer has the right to conduct Buyer Investigations of the property and, as specified in paragraph 19B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.

C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.

Buyer's Initials ( ____ )( ____ )                                   Seller's Initials ( ____ )( ____ )

RIPA REVISED 12/15 (PAGE 5 OF 11)

**RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT (RIPA PAGE 5 OF 11)**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    592 E. 6th

Property Address: *592 E. 6th St., Azusa, CA  91702*                                                    Date: *February 22, 2018*

**17. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

   A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 19B. Within the time specified in paragraph 19B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; may NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; (v) review and seek approval of leases that may need to be assumed by Buyer; and (vi) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations except for minimally invasive testing required to prepare a Pest Control Report; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.

   B. Seller shall make the Property available for all Buyer Investigations. Buyer shall (i) as specified in paragraph 19B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and (ii) give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.

   C. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

   D. **Buyer indemnity and seller protection for entry upon property:** Buyer shall: (i) keep the Property free and clear of liens; (ii) repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**18. TITLE AND VESTING:**

   A. Within the time specified in paragraph 19, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 19B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.

   B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.

   C. Within the time specified in paragraph 19A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

   D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

   E. Buyer shall receive a Standard Coverage Owner's CLTA policy of title insurance. An ALTA policy or the addition of endorsements may provide greater coverage for Buyer. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and shall pay any increase in cost.

**19. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

   A. SELLER HAS: 7 (or _3_ ) Days After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5A, 6, 7, 8B(4), 11A, B, C, and F, 12A and D, 13, 16A, and 18A. Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement if Seller has not Delivered the items within the time specified.

   B. (1) BUYER HAS: 17 (or _5_ ) Days After Acceptance, unless otherwise agreed in writing, to:
      (i) complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(4) and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and (ii) Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 12A.

      (2) Within the time specified in paragraph 19B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

      (3) By the end of the time specified in paragraph 19B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 19A, then Buyer has 5 (or ___ ) Days After Delivery of any such items, or the time specified in paragraph 19B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

Buyer's Initials ( __MPS__ )( __MG__ )                              Seller's Initials ( __VB__ )( _____ )

**RIPA REVISED 12/15 (PAGE 6 OF 11)**

**RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT (RIPA PAGE 6 OF 11)**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    592 E. 6th

DocuSign Envelope ID: BE9B9D79-04F4-4AAB-97AA-28EE63EAAE25

Property Address: *592 E. 6th St., Azusa, CA  91702*                                            Date: *February 22, 2018*

   **(4) Continuation of Contingency:** Even after the end of the time specified in paragraph 19B(1) and before Seller cancels, if at all, pursuant to paragraph 19C, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 19C(1).

**C. SELLER RIGHT TO CANCEL:**
   **(1) Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.
   **(2) Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to the Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): (i) Deposit funds as required by paragraph 3A or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; (ii) Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); (iii) Deliver a letter as required by paragraph 3J(1); (iv) Deliver verification as required by paragraph 3C or 3H or if Seller reasonably disapproves of the verification provided by paragraph 3C or 3H; (v) In writing assume or accept leases or liens specified in 8B4; (vi) Return Statutory and Lead Disclosures as required by paragraph 11A(2) and 12E; or (vii) Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 30B; or (viii) Provide evidence of authority to sign in a representative capacity as specified in paragraph 28. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

**D. NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: (i) be in writing; (ii) be signed by the applicable Buyer or Seller; and (iii) give the other Party at least 2(or ____ ) Days After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days Prior** to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 19.

**E. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

**F. CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: (i) be signed by the applicable Buyer or Seller; and (ii) give the other Party at least 3 (or _____ ) Days After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days Prior** to the scheduled close of escrow.

**G. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds** (Civil Code §1057.3).

**20. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain invoices and paid receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**21. ENVIRONMENTAL HAZARD CONSULTATION:** Buyer and Seller acknowledge: (i) Federal, state, and local legislation impose liability upon existing and former owners and users of real property, in applicable situations, for certain legislatively defined, environmentally hazardous substances; (ii) Broker(s) has/have made no representation concerning the applicability of any such Law to this transaction or to Buyer or to Seller, except as otherwise indicated in this Agreement; (iii) Broker(s) has/have made no representation concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property; and (iv) Buyer and Seller are each advised to consult with technical and legal experts concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property.    .

**22. AMERICANS WITH DISABILITIES ACT:** The Americans With Disabilities Act ("ADA") prohibits discrimination against individuals with disabilities. The ADA affects almost all commercial facilities and public accommodations. Residential properties are not typically covered by the ADA, but may be governed by its provisions if used for certain purposes. The ADA can require, among other things, that buildings be made readily accessible to the disabled. Different requirements apply to new construction, alterations to existing buildings, and removal of barriers in existing buildings. Compliance with the ADA may require significant costs. Monetary and injunctive remedies may be incurred if the Property is not in compliance. A real estate broker does not have the technical expertise to determine whether a building is in compliance with ADA requirements, or to advise a principal on those requirements. Buyer and Seller are advised to contact an attorney, contractor, architect, engineer or other qualified professional of Buyer or Seller's own choosing to determine to what degree, if any, the ADA impacts this principal or this transaction.

Buyer's Initials (  MPS  )(  MG  )                                    Seller's Initials (  TD  )(  _____  )

**RIPA REVISED 12/15 (PAGE 7 OF 11)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                                 592 E. 6th

Property Address: **592 E. 6th St., Azusa, CA  91702**                                     Date: **February 22, 2018**

23. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within 5 (or ___ )Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 16; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

24. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

25. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon, and inure to the benefit of, Buyer and Seller and their respective successors and assigns, except as otherwise provided herein.

26. **COPIES:** Seller and Buyer each represent that Copies of all reports, documents, certificates, approvals and other documents that are furnished to the other are true, correct and unaltered Copies of the original documents, if the originals are in the possession of the furnishing party.

27. **BROKERS:**
   A. **COMPENSATION:** Seller or Buyer, or both, as applicable, agrees to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
   B. **SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: (i) Does not decide what price Buyer should pay or Seller should accept; (ii) Does not guarantee the condition of the Property; (iii) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; (x) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (xi) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.
   C. **BROKERAGE:** Neither Buyer nor Seller has utilized the services of, or for any other reason owes compensation to, a licensed real estate broker (individual or corporate), agent, finder, or other entity, other than as specified in this Agreement, in connection with any act relating to the Property, including, but not limited to, inquiries, introductions, consultations and negotiations leading to this Agreement. Buyer and Seller each agree to indemnify and hold the other, the Brokers specified herein and their agents, harmless from and against any costs, expenses or liability for compensation claimed inconsistent with the warranty and representation in this paragraph.

28. **REPRESENTATIVE CAPACITY:** If one or more Parties is signing the Agreement in a representative capacity and not for him/herself as an individual than that Party shall so indicate in paragraph 40 or 41 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on the Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within 3 Days After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

29. **JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
   A. **The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 9, 11C, 18, 19G, 24, 27A, 28, 29, 35, 38, 39, 40, 41 and paragraph D of the section titled Real Estate Brokers on page 11. If a Copy of the separate compensation agreement(s) provided for in paragraph 27A, or paragraph D of the section titled Real Estate Brokers on page 11 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 11 or elsewhere in the Agreement.
   B. A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** After Acceptance (or _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 11C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials ( MPS )( MG )                Seller's Initials ( )( )
RIPA REVISED 12/16 (PAGE 8 OF 11)

DocuSign Envelope ID: BE9B9D79-04F4-4AAB-97AA-28EE63EAAE25

Property Address: **592 E. 6th St., Azusa, CA  91702**                                  Date: **February 22, 2018**

C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 27A and paragraph D of the section titled Real Estate Brokers on page 11. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 27A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

D. Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: (i) if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

E. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 3 Days After mutual execution of the amendment.

**30. REMEDIES FOR BUYER'S BREACH OF CONTRACT:**

A. Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

B. **LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).

Buyer's Initials  MPS / M S                   Seller's Initials  ✓ / _____

**31. DISPUTE RESOLUTION:**

A. **MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Consumer Mediation Center (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 31C.

B. **ARBITRATION OF DISPUTES:** The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of transactional real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 31C.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials  MPS / M S                   Seller's Initials _____ / _____

C. **ADDITIONAL MEDIATION AND ARBITRATION TERMS:**

(1) EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

(2) PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.

Buyer's Initials ( MPS )( M S )          Seller's Initials ( ✓ )( _____ )

RIPA REVISED 12/15 (PAGE 9 OF 11)

**RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT (RIPA PAGE 9 of 11)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          592 E. 6th

DocuSign Envelope ID: BE9B9D79-04F4-4AAB-97AA-28EE63EAAE25

Property Address: *592 E. 6th St., Azusa, CA  91702*                                       Date: *February 22, 2018*

(3) BROKERS: Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to the Agreement.

32. **SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

33. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

34. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorneys fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 31A.

35. **ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the written consent of Seller. Such consent shall not be unreasonably withheld unless otherwise agreed in writing. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in wiring by Seller (C.A.R. Form AOAA).

36. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

37. **TERMS AND CONDITIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

38. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

39. **DEFINITIONS:** As used in this Agreement:
   A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.
   B. **"Agreement"** means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.
   C. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.
   D. **"Close Of Escrow"** or **"COE"** means the date the grant deed, or other evidence of transfer of title, is recorded.
   E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
   F. **"Days"** means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
   G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.
   H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
   I. **"Deliver", "Delivered"** or **"Delivery",** unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page11, regardless of the method used (i.e., messenger, mail, email, fax, other).
   J. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.
   K. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
   L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
   M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

40. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by *Luther Tsinoglou*                                       , who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by _____ ☐ AM/ ☐ PM, on _____ (date)).

☐ One or more Buyers is signing the Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date *2/22/2018*    BUYER     Michael P. Spagnola
(Print name) *Michael P. Spagnola* DocuSigned by: C7EE60D5A1A14CD...
Date *2/22/2018*    BUYER     Mnh
(Print name) *Dianna L. Spagnola* C6EF60D5A1A14CD...

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

Seller's Initials ( *JS* )( _____ )

RIPA REVISED 12/15 (PAGE 10 OF 11)

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                      592 E. 6th

Property Address: *592 E. 6th St., Azusa, CA 91702*   Date: *February 22, 2018*

**41. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts this above offer and agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☑ (If checked) SELLER'S ACCEPTANCE IS SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED:
 _d  Addendum_

☐ One or more Sellers is signing the Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date *2/23/18*   SELLER _Trustee for BK Estate of Crictallianci_
(Print name) _____
Date _____ SELLER _____
(Print name) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

(___/___)   (Do not initial if making a counter offer.) **CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
(Initials)   personally received by Buyer or Buyer's authorized agent on (date) _____ at _____ ☐ AM/ ☐ PM.
A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

---

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (Selling Firm) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) *Podley Properties*   CalBRE Lic. #*01852348*
By _Luther Tsinoglou_ *Luther Tsinoglou* CalBRE Lic. # *01135433*   Date *02/22/2018*
By _____ CalBRE Lic. # _____   Date _____
Address *30 N. Baldwin Avenue*   City *Sierra Madre*   State *CA*   Zip *91024*
Telephone *(626)695-8650*   Fax *(626)402-1401*   E-mail *Luther@Tsinoglou.com*
Real Estate Broker (Listing Firm) *Neiman Realty*   CalBRE Lic. # _0078611 72_
By _Jan Weiner_ _____ CalBRE Lic. # *00680498*   Date *2 - 5 - 2018*
By _____ CalBRE Lic. # _____   Date _____
Address _____ City _____   State _____ Zip _____
Telephone *(818)516-3779*   Fax _____   E-mail *janneimanbroker@gmail.com*

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked,) ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____ ☐ Seller's Statement of Information and _____
_____ , and agrees to act as Escrow Holder subject to paragraph 29 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____
Escrow Holder _____   Escrow # _____
By _____   Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Bureau of Real Estate.

---

**PRESENTATION OF OFFER:** (_____) Listing Broker presented this offer to Seller on _____ (date).
Broker or Designee Initials

**REJECTION OF OFFER:** (____)(____) No counter offer is being made. This offer was rejected by Seller on _____ (date).
Seller's Initials

©2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020
Buyer's Acknowledge that page 11 is part of this Agreement ( _MPS_ )( _MS_ )

Reviewed by _____
Broker or Designee _____

**RIPA REVISED 12/15 (PAGE 11 OF 11)**

**RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT (RIPA PAGE 11 OF 11)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com   592 E. 6th

DocuSign Envelope ID: BE989D79-04F4-4AAB-97AA-28EE63EAAE25

 CALIFORNIA ASSOCIATION OF REALTORS®

**BUYER'S INSPECTION ADVISORY**
(C.A.R. Form BIA, Revised 11/14)



Property Address: <u>592 E. 6th St., Azusa, CA 91702</u> ("Property").

1. **IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

2. **BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

3. **YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

  A. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and nonstructural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

  B. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

  C. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

  D. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

  E. **WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS;WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

  F. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

  G. **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

  H. **FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

  I. **BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size.

  J. **RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

  K. **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

  L. **NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.

Buyer _Michael P. Spagnola_ 2/22/2018    Buyer _Diana Spagnola_ 2/22/2018
Michael P. Spagnola

© 1991-2004, California Association of REALTORS®, Inc. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____



BIA REVISED 11/14 (PAGE 1 OF 1)

**BUYER'S INSPECTION ADVISORY (BIA PAGE 1 OF 1)**

Podley Properties - Sierra Madre, 30 N. Baldwin Ave. Sierra Madre CA 91024    Phone (626)367-3029    Fax (424)425-1403    592 E. 6th
Luther Tsinajinie    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

## SELLER'S ADDENDUM RE
## SALE OF REAL ESTATE BY CHAPTER 7 TRUSTEE

Additional Terms to Purchase Agreement
592 East 6th Street, Azusa, California 91702

The following terms supplement, amend, and, in the case of a conflict, supersede the terms of the *California Residential Property Purchase Agreement And Joint Escrow Instructions And Court Confirmation Addendum* executed by and between David M. Goodrich ("Trustee"), on the one hand, and Michael P. Spagnola and Dianna L. Spagnola (collectively, "Buyer"), on the other hand, relating to the purchase and sale of the real property commonly described as 592 East 6th Street, Azusa, California 91702 ("Property"). The Purchase Agreement shall be referred to herein as the "Agreement."

1.    Effect of Bankruptcy Case. The Trustee and the Buyer expressly acknowledge and agree that: (i) on November 22, 2017 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"), thereby commencing the bankruptcy case *Crestalliance, LLC,* Case No. 2:17-bk-24396 ER ("Bankruptcy Case"), pending in the Los Angeles Division of the United States Bankruptcy Court for the Central District of California ("Bankruptcy Court"); (ii) on December 14, 2017, the United States Trustee filed its *Motion To Dismiss Or Convert Under 11 U.S.C. Section 1112(b) Of The Bankruptcy Code* which was granted on January 17, 2018; (iii) upon the commencement of the Bankruptcy Case, a bankruptcy estate ("Estate") was created which holds all legal and equitable interests of the Debtor in property as of the Petition Date; (iv) David M. Goodrich ("Trustee" or "Seller") was subsequently appointed as the Chapter 7 trustee of the Estate; and (iv) the Property is property of the Estate, subject to the exclusive control and disposition of the Trustee in accordance with the Bankruptcy Code.

2.    Trustee as Seller. The Trustee is the only person vested with the right to sell the Property under the Agreement and, accordingly, all references to "Seller" in the Purchase Agreement and this Addendum shall refer exclusively to the Trustee.

3.    Controlling Terms. To the extent that terms of the Purchase Agreement conflict with this Addendum, this Addendum controls, and any such conflicting terms in the Purchase Agreement ("Conflicting Terms") are not binding and are hereby superseded. Any such Conflicting Term is identified or specified herein as being superseded or replaced.

4.    Escrow, Escrow Fees, Title, Title Insurance, Hazard Zone Disclosure Report, and Other Reports. Escrow services shall be performed by A & A Escrow. Title services shall be performed by First American Title Co. Should Buyer desire a natural hazard zone disclosure report, Buyer shall pay for the cost of a natural hazard zone disclosure report prepared by a company of Buyer's choice. Except as otherwise set forth herein, Buyer shall bear the expense of any report or inspection.

5.    Transfer Tax. Seller shall pay any applicable County and/or City transfer tax(es).

6.    Insurance. The Buyer shall, at its own expense, acquire any and all insurance policies that the Buyer desires to cover the Property. The Seller does not agree to acquire or transfer any insurance policies to the Buyer.

7.    Financing. The Buyer shall have procured any and all necessary financing to acquire the Property before the close of escrow.

8.    Government Requirements and Retrofit. The Buyer shall, at his/her/its/their/their own expense, pay for the cost of compliance with any minimum mandatory retrofit standards, inspections and reports as may be required by state and/or local law. The Seller is not required to deliver to the Buyer a written statement of compliance with any applicable state and local law.

9.    Energy Conservation. If any local ordinance requires that the Property be brought into compliance with minimum energy conservation standards as a condition of sale or transfer, the Buyer shall, at his/her/its/their/their own expense, comply with and pay for these requirements.

10.    No Representations or Warranties – "As-Is"/"Where-Is"; Transfer of Title. Buyer acknowledges that Seller is a trustee appointed to administer a bankruptcy estate and, particularly, the bankruptcy estate of Crestalliance, LLC in the Bankruptcy Case. Buyer acknowledges and agrees that Seller has not made, does not make, and specifically negates and disclaims any representations, warranties, promises, covenants, agreements or guaranties of any kind or character whatsoever, whether express or implied, oral or written, past, present or future, of, as to, concerning or with respect to the Property. The Buyer further acknowledges and agrees that to the maximum extent permitted by law, the sale of the Property as provided for herein ("Sale") is made on an "as-is"/"where-is" basis with all faults, without any representations or warranties whatsoever by the Seller, and that Seller has no obligations to make repairs, replacements or improvements except as may otherwise be expressly stated herein. Seller and Seller's agents have not and, will not, inspect the Property or determine its condition, fitness or use for any particular purposes, nor will any of them provide any written disclosures, guarantees or warranties of any kind. Seller and Seller's agents are exempt from complying with the requirements of Article 1.5 of the California Civil Code Sections 1102-1102.17 relating to disclosures upon transfer of real property. In any state or local ordinance laws require that the Property be brought into compliance, the Buyer, at his/her/its/their sole expense, shall comply with and pay for any such requirements. Transfer of the Property by Seller shall be by Trustee Deed, Quitclaim Deed or Grant Deed, at Seller's choice.

Buyer's Initials:  ⌐DS  MPS  /  ⌐DS  M C

11.    Encumbrances. Title to the Property is to be transferred to the Buyer free and clear of secured claims of record; however, the Property shall be sold subject to: (1) all general and special taxes that are presently due, or may become due, regarding the Property, other than real property taxes, which shall be prorated at the close of escrow; (2) any lien for supplemental taxes that may be assessed pursuant to Chapter 3.5 (commencing with Section 75) of the California Revenue and Taxation Code; and (3) any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property.

12.    Qualification Regarding Seller Documentation. The Seller is not the owner, but rather a duly appointed and acting chapter 7 bankruptcy trustee and shall only be responsible for providing such documentation as may be in his possession.

13.    Bankruptcy Court Approval and Stay. The Buyer acknowledges that the sale of the Property is subject to Bankruptcy Court approval, and that any Bankruptcy Court order

approving the sale of the Property ("Sale Order") may be subject to a fourteen (14) day waiting period after entry of the order for escrow to close. Approval of the sale will be sought by way of a motion ("Sale Motion") to be prepared and filed by the Seller. Buyer further understands and agrees that the obligation of the Seller to proceed with the transaction represented by the Agreement is conditioned on the ability of the Seller to obtain an order from the Bankruptcy Court that the sale is free and clear of liens. As part of the Sale Motion, Seller shall request a finding of the Buyer's "good faith" in accordance with section 363(m) of the Bankruptcy Code. Should the Bankruptcy Court fail to issue an order with terms and conditions satisfactory to the Seller, Seller has the right to unilaterally terminate the Agreement and Buyer's exclusive remedy is the return of any monies deposited with or given to the Seller or his agents, or placed into escrow by him/her/them or on his/her/their behalf/ves in conjunction with the sale of the Property, and Buyer expressly waives any and all other rights, remedies, recourse or damages against Seller or the Estate.

14.    Overbid.    The Sale shall be subject to overbid at the time of the Bankruptcy Court hearing(s) at which the Bankruptcy Court considers approval of the sale.    The Buyer acknowledges that its purchase of the Property at the price stated in the Agreement is contingent upon there being no higher and better bids presented and accepted at the hearing. The Seller has sole and absolute discretion in determining the amount of all initial and incremental bids utilized in the overbid process. The Buyer expressly agrees that it will not oppose, object to or seek to modify any of the overbid procedures which Seller proposes to the Bankruptcy Court for approval in connection with the Sale.

15.    Dispute Resolution.    Paragraph 31 of the Purchase Agreement is replaced with the following: Any and all disputes in connection with the Purchase Agreement, this Addendum and/or any Sale pursuant thereto are subject to the exclusive jurisdiction and venue of the Los Angeles Division of the United States Bankruptcy Court for the Central District of California in the Bankruptcy Case. The Bankruptcy Court shall have exclusive jurisdiction and authority to interpret any enforce the terms of the Agreement. The Agreement shall be construed pursuant to the laws of the State of California, except to the extent preempted by applicable Federal bankruptcy law.

16.    Effect of Infeasible or Unprofitable Sale.    To the extent that liens, claims, encumbrances or other interests against the Property, if any, or any event, makes the sale infeasible or unprofitable to the Estate, the Seller may cancel any proposed sale under this Agreement. In such case, the Buyer agrees to fully and completely release Seller from any and all obligations under this Agreement. In addition, any escrow shall be cancelled.

17.    Termination and Effect.    In the event that the escrow for the Sale to the Buyer does not close for any reason other than Buyer's default (including, but not limited to, termination of the Agreement by the Seller, a loss of the Seller's interest in the Property prior to the sale, disapproval of the Sale by the Bankruptcy Court, or the Seller's receipt of a higher or better offer for the Property at the time of the Bankruptcy Court hearing at which the Bankruptcy Court considers approval of the Sale), the Agreement shall automatically terminate (if it has not already been terminated) and, in that event, Buyer fully and completely releases Seller from any and all obligations under the Agreement, and escrow shall be cancelled. The Buyer understands that in such event, Buyer's exclusive remedy is the return of any monies deposited with or given to the Seller or his agents, or placed into escrow by him/her/them or on his/her/their behalf/ves in conjunction with the Sale of the Property, as set forth in paragraph 15 above (except that, in the

event that Buyer elects to serve as a "backup bidder," any deposit(s) made by Buyer shall not be returned unless and until the sale of the Property to the winning bidder closes).

18.    Due Diligence, Initial Deposit and Liquidated Damages; Forfeiture of Initial Deposit. Within seven (7) calendar days after execution of this Addendum, Buyer shall deposit, in good funds, the sum of $18,000 with escrow ("Initial Deposit"). Buyer shall have fourteen (14) calendar days from the date of execution of this Addendum to conduct any and all due diligence relating to the Property ("Due Diligence Deadline"). By no later than the Due Diligence Deadline, Buyer may advise the Seller, in writing, of his/her/its/their election to cancel the Sale ("Notice to Cancel"), in which case Buyer shall receive a full refund of the Initial Deposit. Absent Buyer's submission of a Notice to Cancel in accordance with paragraph 19, the Sale shall be without any further contingencies or due diligence requirements of Buyer. Without limiting the generality of the foregoing, Buyer's silence shall be deemed an acceptance and affirmative election to proceed with the Sale without any further contingencies or due diligence requirements. Buyer understands that, immediately upon expiration of the Due Diligence Deadline, absent written notice from Buyer to Seller of the cancellation of the Agreement, the Initial Deposit shall be deemed nonrefundable and should the Buyer fail to consummate the sale or purchase of the Property, the Initial Deposit shall be completely and absolutely forfeited to Seller on behalf of the Estate, and Seller shall retain the Initial Deposit as liquidated damages for such failure. Buyer and Seller acknowledge that the Initial Deposit represents a fair and reasonable estimation of the damages Seller would suffer in the event Buyer fails to consummate the Sale in accordance with the Agreement. The Initial Deposit shall be refundable only in the event of the following: (i) the Bankruptcy Court does not approve the Sale; (ii) Buyer is not the winning bidder at the Bankruptcy Court hearing for approval of the Sale and also is not a "backup bidder," or (iii) Seller is unable to transfer marketable title within thirty (30) days of the Sale Order becoming a final order (or such other later date as the parties may agree).

Buyer's Initials:   MPS  /  M C

19.    Tender of Balance of Purchase Price/Closing. The Sale shall close, with Buyer tendering the full Purchase Price, not more than fourteen (14) calendar days after entry of the Sale Order ("Closing Date"), unless Buyer and Seller mutually agree in writing to extend the Closing Date. In the event that the fourteenth (14th) calendar day following entry of the Sale Order is a weekend or legal holiday, the Closing Date shall be the next business day. Should Buyer fail to consummate the Sale by the Closing Date, Seller shall have the option to sell the Property to any "backup bidder" as set forth in any Sale Order.

20.    Multiple Offers: Buyer recognizes that multiple offers and/or counteroffers (in addition to the instant Addendum) may be pending and Seller reserves the right to choose which contract to submit to the Bankruptcy Court for approval.

21.    Binding Effect. This Addendum shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

22.    Entire Agreement. The Agreement, comprised of the Purchase Agreement and this Addendum, contains the entire agreement between Seller and Buyer with respect to the matters addressed in the Agreement, and supersedes all prior agreements or addenda, whether written or oral.

23.    Severance of Provisions.  If one or more provisions of this Addendum are held to be unenforceable under applicable law, the parties agree to renegotiate such provision in good faith. In the event that the parties cannot reach a mutually agreeable and enforceable replacement for such provision, and the spirit and intent of this Addendum may be maintained, then (a) such provision shall be excluded from this Addendum, (b) the balance of this Addendum shall be interpreted as if such provision were so excluded and (c) the balance of this Addendum shall be enforceable in accordance with its terms.  As necessary, either of the parties hereto may seek such appropriate relief from the Bankruptcy Court.

24.    Counterpart Execution.  This Addendum may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument. Delivery of an executed counterpart of this Addendum by fax or electronic mail shall be equally as effective as delivery of an executed hard copy of the same.  Any party doing so shall also deliver an executed hard copy of same, but the failure by such party to deliver an executed hard copy shall not affect the validity, enforceability and binding effect of this Addendum.

SELLER

DATED: February 28, 2018    By: _____

David M. Goodrich
Chapter 7 Trustee of the Bankruptcy Estate of
Crestalliance, LLC

BUYER

DATED:    2/28/2018

DocuSigned by:

Michael P. Spagnola

Michael P. Spagnola
Buyer

DATED:    2/28/2018

DocuSigned by:

Debra Spagnola

Debra Spagnola
Buyer

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

650 Town Center Drive, Suite 950, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify:* **CHAPTER 7 TRUSTEE NOTICE OF HEARING RE: MOTION FOR ORDER (1 CHAPTER 7 TRUSTEE'S MOTION FOR ORDER:  (1) AUTHORIZING SALE OF 592 EAST 6TH STREET, AZUSA, CALIFORNIA  91702, FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS; (2) APPROVING PROPOSED OVERBID PROCEDURES; (3) DETERMINING THAT BUYERS ARE GOOD FAITH PURCHASERS; (4) AUTHORIZING PAYMENT OF COSTS OF SALE FROM ESCROW; (5) WAIVING THE FOURTEEN (14) DAY STAY PRESCRIBED BY RULE 6004(h) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE;**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>April 4, 2018</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Francisco Aldana    efile@aldanalawoffice.com
- Sean C Ferry    sferry@ecf.courtdrive.com, bkyecf@rasflaw.com
- Todd S Garan    ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- David M Goodrich (TR)    dgoodrich@wgllp.com, c143@ecfcbis.com;dgoodrich11@ecf.epiqsystems.com;lrobles@wgllp.com
- Michael Y Lo    bklolaw@gmail.com, jaylo1225@gmail.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Reilly D Wilkinson    rwilkinson@scheerlawgroup.com
- Hatty K Yip    hatty.yip@usdoj.gov

**2. <u>SERVED BY UNITED STATES MAIL</u>:**
On April 4, 2018, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

United States Bankruptcy Court
The Honorable Ernest M. Robles
255 E. Temple Street
Suite 1568
Los Angeles, CA  90012

<u>**Potential Buyers**</u>
Michael and Dianne Spagnola
2050 Liliano Drive
Sierra Madre, CA 91024

Ocwen
Agent for Service Process
Vivian Imperial
818 Seventh Street, Suite 930
Los Angeles, CA  90017

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


| April 4, 2018 | Lorraine L. Robles | */s/ Lorraine L. Robles* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |